### HEAD BROTHERS v. THOMPSON *et al.*

1. **Mortgages**: ASSUMPTION BY PURCHASER OF LAND: AGREEMENT WITHOUT MUTUALITY: FRAUD: EVIDENCE. Defendants, husband and wife, were owing four certain mortgages on their land, which plaintiffs either owned or had authority to collect; also another mortgage to M., which was of record, but of which plaintiffs had no actual notice. Defendants proposed to convey the land to plaintiffs in satisfaction of the encumbrances, and plaintiffs accepted the proposition, and a plain warranty deed without reservations was made accordingly, but the evidence (see opinion) shows that plaintiffs understood that the four mortgages held by them were the only encumbrances, and that they did not intend to assume any other, and that defendants knew of the mortgage to M. *Held—*

   (1) That if defendants understood that plaintiffs meant to assume the mortgage to M. also, then the minds of the parties did not meet, and there was no agreement in law.

   (2) That if defendants knew that plaintiffs were relying on their statements as to liens, then it was a fraud for them not to disclose the existence of the mortgage to M., and such a fraud as to make the agreement void, if one was made.

2. **Deed**: DELIVERY: FACTS NOT CONSTITUTING. Defendants entered into an agreement with plaintiffs to convey to them certain land in satisfaction of certain mortgages thereon which plaintiffs either owned or controlled, and a deed was at the time made by defendants, who lived in the country, and left at plaintiffs' bank. The deed was a plain warranty deed, and was made to one of the plaintiffs who was at the time absent. No consideration passed at the time,—the mortgages, which were the sole consideration, not being at hand, but plaintiffs were to procure them to be assigned and sent to them, and then the transaction was to be closed up. *Held* that there was no delivery of the deed, and that it was of no effect until the mortgages were delivered.

*Appeal from Greene District Court.*—HON. J. P. CONNER, Judge.

FILED, MAY 9, 1889.

ACTION in equity for judgments on notes, and decree foreclosing four mortgages, given to secure the

same, on a certain quarter section of land. The defendants' answer admits that but for the matter alleged in defense the plaintiffs would be entitled to decree as prayed. They allege as defense that on or about the twenty-eighth day of January, 1888, the plaintiffs, through Mahlon Head, a member of the firm, verbally contracted with the defendants to take said land, and to pay therefor all the liens and encumbrances then standing against it; that on the same day, and in pursuance of said agreement, the defendants executed to Mahlon Head their deed to said land, subject to all liens and encumbrances then standing against it; and that the said deed was delivered to and accepted by the plaintiffs in full payment of the four mortgages set out in the petition, and of all liens and encumbrances against said land; wherefore defendants ask that the notes and mortgages sued on be canceled; that a decree be entered that the plaintiffs and Mahlon Head take said land subject to the other liens not sued on; and that all said liens be decreed paid to the plaintiffs and Mahlon Head. The plaintiffs, in reply, deny that it was agreed as alleged by defendants, and aver that George W. Thompson of his own accord proposed to deed said lands to avoid foreclosure, and that the defendants, without any agreement whatever on the part of the plaintiffs, executed a warranty deed conveying said land to Albert Head, one of the plaintiffs. That the defendants, with the intent to defraud the plaintiffs, represented that there was no encumbrance on said land other than plaintiffs' mortgage, by declaring in said deed that said premises were free and clear of all liens and encumbrances. Plaintiffs deny that said deed was ever delivered to them or either of them, and allege that they refused to accept the same, and that it was destroyed in the presence of, and with the knowledge and consent of, defendant George W. Thompson. There is no controversy but that the plaintiffs held the notes and four mortgages sued upon; that they notified defendants that the same were about to become due, and

Head Brothers v. Thompson.

that the defendants called on Mahlon Head with reference thereto ; that on the day they called Mahlon Head prepared a deed for the land from the defendants to himself or Albert Head ; that the defendants executed and acknowledged said deed in the plaintiffs' bank, and left it there ; that soon thereafter, on the same day, Mahlon Head examined the records, and, finding thereon a mortgage from the defendants to C. W. and J. N. Meath on the same land, for sixteen hundred dollars, met the defendant George W. Thompson, and told him that there was another mortgage against that land ; that he did not know anything about it when he wrote the deed ; that he could not stand it ; that he could not buy it and pay the the encumbrances on it ; that it was more than the land was worth ; and that he would destroy the deed, and did then and there tear the deed in pieces. The further facts appear in the opinion.

*Howard & Rose*, for appellants.

*A. M. Head*, for appellees.

GIVEN, C. J.—I.  The points in controversy are whether the plaintiffs agreed to pay all the encum-

1. MORTGAGES: assumption by purchaser of land : agreement without mutuality ; fraud : evidence.

brances standing against the land, and whether the deed was delivered.  The agreement must be arrived at largely from circumstances, as the testimony of both parties shows that but little was said.  It is evident from the circumstances and what was said and done that the defendants intended to convey to the plaintiffs, or to whichever of them they might designate, their interest in the land ; and that the plaintiffs intended to receive such conveyance in full satisfaction of the notes and four mortgages in suit.  It is equally evident that at the time of making the deed the defendants did, and the plaintiffs did not, know of the existence of the Meath mortgage, and that the defendants made no mention of that mortgage at the time.  The defendants both testify that the deed prepared by Mahlon Head and executed by them expressly provided that he was taking the land,

assuming all the encumbrances thereon ; and the plaintiff Mahlon Head testifies that it was just a plain warranty deed, with no exceptions in it of any kind. It appears from the testimony of Mahlon Head that he did not know of the Meath mortgage. His examination of the records, his declaration, immediately after, that he would not accept the deed, and his destroying the same, show that he did not know of the Meath mortgage at the time he wrote the deed. He evidently was acting on the belief that there were no other encumbrances except plaintiffs' four mortgages ; hence it would have been unusual should he have expressed any reservation in the deed, as the four mortgages were to be satisfied by it. The weight of the evidence is in favor of the conclusion that the deed was a plain warranty deed without any exceptions in it.

II. The objection to the testimony of Mrs. Thompson as to what passed between her and her husband before going to the bank to execute the deed was well taken.

III. In support of the defense, Mrs. Thompson testifies that on going to the bank Mahlon Head said: "Mrs. Thompson, this is a warranty deed of your quarter section of land, conveying the farm to me. I am taking it, and assuming all encumbrances thereon. If you are willing, sign your name right here." Mr. Thompson testifies that on calling at the bank Mahlon Head said: "'What shall we do with regard to the mortgages on your land?' I told him the best thing I could do was to turn the land over to him, and he assume all the encumbrances on the land. He said, 'All right ; I would rather do that than foreclose the mortgage.'" Mahlon Head testifies that when Mr. Thompson came into the bank he said to him: "'George, what are you going to do about that land and those mortgages and those notes?' and he answered: 'All I can do is to turn them over to you. We can deed the land to you;' and I said: 'Will you and your wife sign the deed?' and he said, 'Yes ; we would like to get along with as little expense as possible.'" That when Mr. Thompson

returned with Mrs. Thompson he said to her, "Mrs. Thompson, I want you to sign a deed," and she signed it. These apparent contradictions are easily reconciled when we remember that the defendants were acting with a full knowledge of the Meath mortgage, and that Mahlon Head was acting without such knowledge, and with the supposition that there was no other encumbrance than the plaintiffs'. Mr. Thompson testified that Mahlon Head asked him if there were any liens filed, and if there were any judgments against the land, and that he told him "No," and again that he did not tell him anything about the Meath mortgage. The reasonable conclusion is that Head acted upon the belief that there were no other encumbrances than the plaintiffs' four mortgages, and hence did not intend to be understood as assuming the Meath mortgage; while, upon the other hand, the defendants acted upon the understanding that he was agreeing to assume the Meath mortgage. If such be the correct conclusion, then that essential element of an agreement, mutuality, is lacking, and there was no agreement at all.

IV. Head's inquiries of Mr. Thompson as to liens were such as to show him that Head was relying upon his statements, and good faith required that Thompson should have declared the existence of the Meath mortgage. This he did not do. Though it is true that Head had constructive notice, yet, if Thompson knew that Head was relying upon his statements, then it was a fraud for him not to have disclosed the existence of the Meath mortgage, and such a fraud as should make void the agreement if one were made.

V. As to the delivery of the deed, we hold that it is immaterial whether it was executed to Mahlon Head or to Albert Head. As Mahlon Head had authority to take the deed in Albert's name, we think it clear that he had authority to receive it, but the question remains, was there a delivery of the deed to Mahlon Head? The testimony shows that when executed it was left on the plaintiffs' bank

2. DEED: delivery: facts not constituting.

counter, and soon thereafter was in the personal possession of Mahlon Head at the time he tore it up. It appears, however, that no part of the consideration had yet passed to the defendants. Mr. Thompson testifies that Head said to him that he did not have the mortgages and notes there then; that in the course of .two or three weeks he would have all the papers, and then turn them over. Mr. Head testifies: "I remarked to him that I did not have the Kellogg mortgages here then; that I would send for them, and have them assigned to Head Bros., and when they come, if all right, I will deliver to you the mortgages." Mr. Lovejoy, the notary, testifies that the deed was to Albert Head; that when he came into the bank to take the acknowledgment "Mr. Thompson held the deed in his hand. He came up and signed it, also his wife; and he said something about her mortgage, * * * about taking it up, * * * and about some one, * * * I think it was Mr. Kellogg's mortgage. I remember distinctly that Mr. Head said: 'You sign this deed, and I will take up her mortgages.' He mentioned his and Kellogg's mortgages." It appears there were no exceptions in the deed; that it was to Albert Head, who was then absent; that it remained for the plaintiffs to get an assignment of the Kellogg notes and mortgages, and that they, with plaintiffs' notes and mortgages, were to be canceled and delivered up if everything was all right. We conclude that the deed was executed at that time, because of the presence of Mrs. Thompson in town, and that the deed was to be held and be of no effect until the notes and mortgages were canceled and surrendered. Entertaining these views, the decree of the district court is

AFFIRMED.